UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTINE L. BAILEY<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>MICHAEL J. MacFARLAND, and THE PUBLIC GROUP, a Utah Limited Liability Company; and DOES 1-20, inclusive,<br><br>　　　　　Defendants. | No.  2:15-cv-01725-TLN-AC<br><br>**ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND** |

　　　　This matter is before the Court on Defendants Michael J. MacFarland ("MacFarland") and the Public Group, LLC's (the "Public Group") (collectively "Defendants") motion to dismiss Plaintiff Christine Bailey's ("Plaintiff") first and second claims in the complaint. (ECF Nos. 5-1 & 1).  Plaintiff opposes the motion, and Defendants have filed a reply.  (ECF Nos. 7 & 9)  For the reasons stated below, the motion to dismiss is granted with leave to amend.

**I.  Factual Allegations and Procedural History**

　　　　Plaintiff alleges that the Public Group, LLC was and now is a limited liability company organized under the laws of the State of Utah with its principal place of business in Utah.  (ECF No. 1 ¶ IV.)  The Public Group was incorporated in Utah on or about July 1, 2003, under the name of eSurplus Auction, LLC, and by an amendment filed February 8, 2005, the company

name was changed to Public Surplus, LLC.  (ECF No. 1 ¶ XI.)  A further amendment was filed October 29, 2008, and the name was changed to the Public Group.  (ECF No. 1 ¶ XI.)

Plaintiff and Defendant MacFarland were married on May 29, 1994 in Hawaii County, Hawaii, and they were divorced on February 7, 2012.  (ECF No. 1 ¶ VI.)  Plaintiff states Defendant MacFarland failed to list any interest in the Public Group on an Asset and Debt Statement that he filed with the family court on January 25, 2012.  (ECF No. 1 ¶ VII.)  The court "granted the divorce based upon" said Asset and Debt Statement.  (ECF No. 1 ¶ VII.)

According to "a summary of assets",  the wills of Plaintiff and Defendant MacFarland, dated March 1, 2005, each list a twelve percent interest in Public Surplus, LLC and a dividend to be received beginning January 1, 2008, based on a $100,000 investment given to the Public Group's predecessor.  Further, Plaintiff and MacFarland's tax records "indicate that Public Surplus, LLC issued a K-1 for 2006 and Public Group issued K-1s for 2008 and 2009."[1]  (ECF No. 1 at ¶ IX.)

In early 2013, the IRS reviewed Plaintiff and Defendant's joint tax returns for 2008, 2009, and 2010.  (ECF No. 1 at ¶ XII.)  Plaintiff contacted Derek MacFarland, a registered agent for the Public Group, "requesting documentation of the ownership in Public Surplus, LLC for the years under audit."  (ECF No. 1 ¶ XIII.)  General counsel responded on July 1, 2013, with a letter in which he denied the request for documentation and stated Plaintiff had no ownership interest for 2009 or subsequent years.  (ECF No. 1 ¶ XIV.)  He "further stated that she had an ownership interest in 2008, which issue was resolved [sic] with the IRS, and in prior years she had an intermittent ownership."  (ECF No. 1 ¶ XIV.)  General counsel later issued a similar response to a different attorney hired by Plaintiff.  (ECF No. 1 ¶¶ XV, XVI.)

Subsequently, Plaintiff received a bill for taxes and penalties related to her ownership interest in Public Surplus, LLC.  (ECF No. 1 ¶ XVII.)  Plaintiff "was later granted an innocent

---

[1] "A Schedule K-1 is used as part of the tax return to report the partner's share of income, credits, deductions and other items resulting from the partnership." *Hansen v. C.I.R.*, 471 F.3d 1021, 1026 n. 6 (9th Cir. 2006).

2

spouse by the IRS for the amount due in 2008."[2]  (ECF No. 1 ¶ XVII.)

In a declaration[3] dated January 31, 2015, that was filed in the divorce action, Defendant MacFarland claims that he never had an interest in the company called the Public Group, or related entities, and he further claims that any Schedule K-1's he received were for repayment of a $100,000 loan made to his son.  (ECF No. 1 ¶ X.)  None of the K-1's received by Plaintiff, or Plaintiff and Defendant MacFarland's tax records, show any repayment, special dividends or interest related to the loan.  (ECF No. 1 ¶ X.)

On June 8, 2015, Plaintiff received from Defendant MacFarland a request to sign an IRS document acknowledging that Plaintiff and Defendant MacFarland held an ownership interest in Public Surplus, LLC in 2009.  (ECF No. 1 ¶ XVIII.)  Defendant MacFarland indicated that he had already signed such a document acknowledging his ownership in 2009, which contradicts other representations made by MacFarland regarding the Public Group.  (ECF No. 1 ¶ XVIII.)

Plaintiff alleges she "did in fact reasonably rely on Defendants['] misrepresentations and omissions and did in fact, not claim an interest in Public Group or a right to receive distributions in the divorce proceedings or afterwards."  (ECF No. 1 ¶ XXIII.)

On August 13, 2015, Plaintiff filed the instant complaint.  (ECF No. 1.)  Plaintiff's claims are as follows: 1) fraud; 2) intentional misrepresentation; 3) breach of contract; 4) breach of the covenant of good faith; 5) breach of fiduciary duty; 6) conspiracy; 7) fraudulent transfer of assets without consideration; 8) a request for attorney's fees; and 9) a request for an accounting.

On October 1, 2015, Defendants filed a motion to dismiss Plaintiff's first and second claims for relief.  (ECF No. 5.)  On November 5, 2015, Plaintiff filed an opposition to Defendants' motion to dismiss.  (ECF No. 7.)  On November 12, 2015, Defendants filed a reply.  (ECF No. 9.)

/ / /

---

[2] The Court assumes Plaintiff means she was not held responsible for unpaid taxes or penalties owed by Defendant MacFarland.

[3] This declaration is not attached to the complaint.

**II. Standard**

A motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Federal Rule of Civil Procedure 8(a) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). Under notice pleading in federal court, the complaint must "give the defendant fair notice of what the claim…is and the grounds upon which it rests." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted). "This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002).

On a motion to dismiss, the factual allegations of the complaint must be accepted as true. *Cruz v. Beto*, 405 U.S. 319, 322 (1972). A court is bound to give plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. *Retail Clerks Int'l Ass'n v. Schermerhorn*, 373 U.S. 746, 753 n.6 (1963). A plaintiff need not allege "'specific facts' beyond those necessary to state his claim and the grounds showing entitlement to relief." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556 (2007)).

Nevertheless, a court "need not assume the truth of legal conclusions cast in the form of factual allegations." *United States ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986). While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *See also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice"). Moreover, it is inappropriate to assume that the plaintiff "can prove

1   facts that it has not alleged or that the defendants have violated the…laws in ways that have not
2   been alleged[.]" *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*,
3   459 U.S. 519, 526 (1983).
4         Ultimately, a court may not dismiss a complaint in which the plaintiff has alleged "enough
5   facts to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 697 (quoting
6   *Twombly*, 550 U.S. at 570). Only where a plaintiff fails to "nudge[] [his or her] claims … across
7   the line from conceivable to plausible[,]" is the complaint properly dismissed. *Id.* at 680. While
8   the plausibility requirement is not akin to a probability requirement, it demands more than "a
9   sheer possibility that a defendant has acted unlawfully." *Id.* at 678. This plausibility inquiry is "a
10  context-specific task that requires the reviewing court to draw on its judicial experience and
11  common sense." *Id.* at 679.
12        In ruling upon a motion to dismiss, the court may consider only the complaint, any
13  exhibits thereto, and matters which may be judicially noticed pursuant to Federal Rule of
14  Evidence 201. *See Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988); *Isuzu*
15  *Motors Ltd. v. Consumers Union of United States, Inc.*, 12 F. Supp. 2d 1035, 1042 (C.D. Cal.
16  1998).
17        If a complaint fails to state a plausible claim, "[a] district court should grant leave to
18  amend even if no request to amend the pleading was made, unless it determines that the pleading
19  could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130
20  (9th Cir. 2000) (en banc) (quoting *Doe v. United States*, 58 F.3d 484, 497 (9th Cir. 1995)); *See*
21  *also Gardner v. Marino*, 563 F.3d 981, 990 (9th Cir. 2009) (finding no abuse of discretion in
22  denying leave to amend when amendment would be futile). Although a district court should
23  freely give leave to amend when justice so requires under Rule 15(a)(2), "the court's discretion to
24  deny such leave is 'particularly broad' where the plaintiff has previously amended its
25  complaint[.]" *Ecological Rights Found. v. Pac. Gas & Elec. Co.*, 713 F.3d 502, 520 (9th Cir.
26  2013) (quoting *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 622 (9th Cir. 2004)).
27  / / /
28

**III. Analysis**

    A.  Judicial Notice

Defendants request that the Court take judicial notice of a copy of the Agreement in Contemplation of Divorce, and a copy of the Asset and Debt Statement filed with the Family Court of the Third Circuit in Hawaii on January 25, 2012. (Req. for Judicial Notice, ECF No. 5-2 at 2.) "Courts can consider documents that are referenced in the complaint under the 'incorporation by reference' doctrine." *Oklahoma Firefighters Pension & Ret. Sys. v. IXIA*, 50 F. Supp. 3d 1328, 1349 (C.D. Cal. 2014) (citing *In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1405 n. 4 (9th Cir. 1996)). Both documents are referenced in the complaint (ECF No. 1 ¶¶ VII–VIII) and Plaintiff does not oppose the request. The Court takes judicial notice of said documents.

    B.  Additional Allegations

The Court notes that Plaintiff's opposition contains a more lengthy statement of facts than what is contained in the complaint. As a partial list, the opposition contains the following new factual allegations:

- Plaintiff and MacFarland "invested 2,000,000 from the sale of the company MJM marketing that they owned equally plus the proceeds from the 'fire' sale of their home and the loan of $100,000 into Public Surplus, LLC or related entities based upon statements made by Mr. MacFarland during their marriage." (ECF No. 7 at 3.)
- Plaintiff "has will documentation from 2005 that shows a 24% ownership in Public Surplus plus a $100,000 loan to the company, which loan [sic] entitled them to monthly dividends of $1,000." (ECF No. 7 at 3–4.)
- "There is a letter from MacFarland to the couples' tax accountant … in late 2007 showing them receiving dividends from Public Surplus as well as consulting fees from eGovBiz. eGovBiz is affiliated with the Public Group." (ECF No. 7 at 4.)
- "After Ms. Bailey and MacFarland divorced, she received a February 16, 2013 request from Durham Jones & Pinegar, who represent Mr. MacFarland, that she sign POA documents to support an IRS audit of Public Surplus." (ECF No. 7 at 4.)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15

- Plaintiff "also found a note in Mr. MacFarland's handwriting, which states that he is borrowing $3,500 from the Public Group each month."  (ECF No. 7 at 7.)
- Plaintiff's friend accessed MacFarland's personal computer and therein discovered "a number of documents that support Mr. MacFarland's and [Plaintiff's] ownership in [t]he Public Group," including a document that shows the "McFarland Family controlling 52.6% of the company."  (ECF No. 7 at 7.)
- "A comparison of the ownership in the Public Group with the previous company of RFP Depot, which company is noted in Michael MacFarland's [January 31, 2015] Declaration … shows that the ownership is strikingly similar between the two companies."  (ECF No. 7 at 8.)
- "It appears that Mr. MacFarland managed to transfer approximately $3,000,000 (the net proceeds of the $3,350,000 sale of MJM Marketing plus the 'fire' sale of [Plaintiff's] and Mr. MacFarland's home at $895,000) worth of investment monies to his son and his son's family tax free at the expense of [Plaintiff], whose interest completely disappears without compensation."  (ECF No. 7 at 9.)

16
17
18
19
20

In summary, the new allegations in the opposition support Plaintiff's position that Defendant MacFarland concealed ownership in the Public Group and other businesses, either before or after their divorce.  These allegations also support Plaintiff's position that MacFarland transferred funds between accounts in order to keep them from Plaintiff, either before or after their divorce.

21
22
23
24
25
26
27
28

However, the Court's consideration of these allegations is not appropriate in ruling on a motion to dismiss.  These allegations are not within the four corners of the complaint.  Plaintiff attaches numerous documents to support these allegations, but it appears most of these documents are not referenced in the complaint.  (ECF Nos. 7-1 & 7-2.)  *See Informix Software, Inc. v. Oracle Corp.*, 927 F. Supp. 1283, 1287 (N.D. Cal. 1996) ("[Plaintiff] makes new arguments based on allegations not included in the complaint, nor included in documents attached to the complaint.  These arguments are improper on a motion to dismiss.  [] The Court does not rule on the

sufficiency of these new allegations."). *Hal Roach Studios, Inc. v. Richard Feiner & Co.,* 896 F.2d 1542, 1555 (9th Cir. 1989) (citing *Fort Vancouver Plywood Co. v. United States,* 747 F.2d 547, 552 (9th Cir. 1984)) ("Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion"). Therefore, the Court will evaluate Defendant's motion to dismiss relative only to the allegations in the complaint. The appropriate place to assert these new allegations is in an amended complaint.

### C.  Fraud, Intentional Misrepresentation, and Rule 9(b)

Plaintiff's first claim for relief (fraud) has analogous elements to the second claim for relief (intentional misrepresentation). Under California law, the elements of fraud are: "(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." *Lovejoy v. AT & T Corp.,* 92 Cal. App. 4th 85, 93 (2001) "[T]he elements for an intentional-misrepresentation, or actual-fraud, claim are (1) misrepresentation; (2) knowledge of falsity; (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage." *Helo v. Bank of Am. Servicing Co*., No. 1:14-CV-01522-LJO, 2015 WL 4673890, at *3 (E.D. Cal. Aug. 6, 2015) (internal quotations omitted). Plaintiff does not state a reason to distinguish these causes of action in the complaint. It appears the same allegations that form the basis for a "fraud" claim also form the basis for Plaintiff's "intentional misrepresentation" claim. Therefore, the Court will analyze these claims simultaneously.

Defendants argue that Plaintiff's first and second claims are not pled with the particularity required under Federal Rule of Civil Procedure 9(b). Federal courts will apply state law to determine whether the elements of fraud have been pled adequately to state a cause of action, but Rule 9(b) requires that the circumstances establishing fraud must be stated with sufficient particularity. *Vess v. Ciba-Geigy Corp*. USA, 317 F.3d 1097, 1103 (9th Cir. 2003). Specifically, Rule 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). The allegations underlying a

fraud claim must be "specific enough to give defendants notice of the particular misconduct … so that they can defend against the charge." *Vess*, 317 F.3d at 1106 (internal quotation marks omitted). "Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Id.* (citing *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)). "[A] plaintiff must set forth *more* than the neutral facts necessary to identify the transaction. The plaintiff must set forth what is false or misleading about a statement, and why it is false." *Id.* (citing *Decker v. GlenFed, Inc.*, 42 F.3d 1541, 1548 (9th Cir. 1994)).

Although Defendants make more specific arguments in their motion to dismiss, Defendants state Rule 9(b) as the underlying principle for each of these arguments. The Court turns first to these arguments relative to Defendant MacFarland and second to these arguments relative to Defendant Public Group, with the requirements of Rule 9(b) as the backdrop for these arguments.

    *i. Defendant MacFarland*

Defendants contend that Plaintiff's claims are contradicted by the complaint itself and the documents referenced in the complaint. (ECF No. 5-1 at 6.) Defendants also contend that Plaintiff does not adequately state when the alleged misrepresentations occurred or how she relied upon the alleged misrepresentations. (ECF No. 5-1 at 7–8.) Defendants highlight Plaintiff's following allegations: MacFarland misrepresented that he lacked an interest in the Public Group (it appears as part of an asset disclosure during the divorce proceedings) (ECF No. 1 ¶ XX); MacFarland attempted to hide his interest in the Public Group by filing a declaration in January 2015 stating that he never owned an interest (ECF No. 1 ¶ XX); and because of these omissions, Plaintiff did not claim an interest in the Public Group or a right to receive distributions in the divorce proceedings or afterward (ECF No. 1 ¶ XXIII). However, Plaintiff states inconsistently that, "[u]nder Paragraph 10 of the Agreement in Contemplation of Divorce, the parties are to split equally any income or distributions from their prior business dealings including, but not limited to, income and distributions from Public Surplus, LLC." (ECF No. 1 ¶ VIII.)

//

Paragraph 10 of the Agreement reads a follows:

> The parties shall split equally any income or distributions made to either of the parties associated with their prior business dealings including from the Public Group, and the two subsidiaries: Public Surplus and Public Purchase and their predecessors or successors as they may occur. Husband shall be responsible for informing Wife of any such income or distributions as they may occur.

(Ex. A, ECF No. 5-4 ¶ 10.)

The Court agrees there is some inconsistency in that Plaintiff alleges she did not claim an interest in the Public Group (ECF No. 11 ¶ XXIII) but also acknowledges that the Agreement provides that she and MacFarland will split income or distributions from the Public Group (ECF No. 1 ¶ VIII). However, the Court takes Plaintiff's position overall to be simply that MacFarland has concealed income or distributions associated with the Public Group, at various points before, during, or after the divorce proceedings, irrespective of what the Agreement in Contemplation of Divorce provides. Thus, this inconsistency does not by itself defeat Plaintiff's first and second causes of action, provided she can meet the federal pleading requirements and common law elements for these causes of action.

However, the complaint does not meet the requirements of Rule 9(b), which are that Plaintiff state specifically the circumstances surrounding the alleged fraud, including the specific times *when* fraud occurred and *how* Plaintiff relied upon that fraud. *See Vess*, 317 F.3d at 1106 (providing a plaintiff must plead the "who, what, when, where, and how of the misconduct charged"). For example, the complaint states the divorce court "granted the divorce based upon Assets and Debt Statements filed on January 25, 2012 in which MacFarland claims no ownership in Public Group or its related entities…."[4] (ECF No. 1 ¶ VII.) The complaint refers to a January 2015 declaration in which MacFarland allegedly denied having an interest in the Public Group. (ECF No. 1 ¶ X.) The complaint also states the IRS investigated Plaintiff's and MacFarland's tax

---

[4] Defendants submit that at least as of January 25, 2012, MacFarland did not have an interest in the Public Group. Defendants also argue Plaintiff must plead facts supporting a claim that MacFarland owned an interest in the Public Group on this date, which was when the Asset and Debt Statement was filed. (ECF No. 5-1 at 7.) However, it is not apparent that a fraud claim must rely upon this set of facts (as opposing to allegations of misrepresentation occurring before or after divorce, including ongoing representations).

10

returns from "2008, 2009 and 2010 related to their ownership in Public Surplus, LLC," and makes reference to K-1's issued by Public Surplus, LLC and/or the Public Group from 2006, 2008, and 2009. (ECF No. 1 ¶¶ XII, IX.) However, without more, there is not adequate detail to support the inference that MacFarland's denial of an ownership interest in the Public Group, during these specific time periods, constitute misrepresentations that caused Plaintiff injury.

The complaint also does not adequately state facts to support a claim that Plaintiff relied upon allegations by MacFarland resulting in damages, which are required elements of fraud and intentional misrepresentation claims under California law. *See Lovejoy*, 92 Cal. App. 4th at 93; *Helo*, 2015 WL 4673890 at *3. Again, Plaintiff acknowledges that the Agreement in Contemplation of Divorce entitles her to split the income/distributions from the Public Group. While the facts pled arguably state a claim that MacFarland is violating the Agreement, these facts are not sufficient to state a *fraud* cause of action as against MacFarland.[5]

Plaintiff makes numerous new allegations in her opposition which she indicates would satisfy the requirements of Rule 9(b) and would establish the elements for a fraud and/or intentional misrepresentation claim; Plaintiff may plead these facts in an amended complaint.[6]

*ii. Defendant Public Group*

Plaintiff does not allege specifically that actions by Defendant MacFarland also are the basis for claims against the Public Group, on the theory that MacFarland is an agent of the Public Group. However, to the extent that theory is implied in the complaint, for the reasons stated *supra* regarding lack of detail under Rule 9(b) and missing elements under California law for fraud-based claims, the Court finds that Plaintiff does not adequately state claims against the Public Group.

Other than actions on the part of Defendant MacFarland, Plaintiff alleges that her divorce attorney wrote to a Derek MacFarland in May 2013 requesting documentation of the years for

---

[5] The complaint contains a breach of contract cause of action, which Defendants do not move to dismiss.

[6] The Court underscores that Plaintiff need only submit a "short and plain statement" for relief. Fed. R. Civ. P. 8(a)(2). It is undisputed that at some point MacFarland had an interest in the Public Group. Most of the allegations in Plaintiff's opposition, accepted as true, confirm this fact, but it is not clear that they address when and how Plaintiff was injured due to fraud, which are the basis for Defendants' motion to dismiss.

which the IRS was investigating the Public Group: 2008, 2009, and 2010.  (ECF No. 1 ¶¶ XII, XIII.)  Then, "General Counsel [of the Public Group], Jason Dixon, responded on July 1, 2013 by a letter in which he denied the request for documentation and stated [Plaintiff] had no ownership interest for 2009 or subsequent years.  He further states that she had an ownership interest in 2008, which issue was resolved [sic] with the IRS, and in prior years she had an intermittent ownership."  (ECF No. 1 ¶ XIV; *see* ECF No. 5-1 at 8.)  A different attorney wrote to Derek MacFarland in September 2013 and received a similar response from general counsel.  (ECF No. 1 ¶¶ XV, XVI.)

      Simply put, the Court does not find that these additional allegations meet Rule 9(b)'s requirements that Plaintiff state with particularity the circumstances surrounding fraud or intentional misrepresentation by the Public Group or its agents.  Without more, these allegations also do not support an inference that Plaintiff relied upon these statements by general counsel to her detriment, which is a required element for a fraud and intentional misrepresentation claim.  For these reasons, the first and second claims for relief against the Public Group are dismissed with leave to amend.

### IV.  Conclusion

      For the reasons set forth above, the Court hereby GRANTS Defendants' motion to dismiss (ECF No. 5) Plaintiff's first and second claims, with leave to amend.

Dated: May 6, 2016

Troy L. Nunley
United States District Judge